F. # 2014R01045

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

15 MISC 1300

- - - - - - - - - - - - - - - - - - - -X

IN RE APPLICATION OF
THE UNITED STATES OF AMERICA
FOR AN ORDER AUTHORIZING THE USE OF
A PEN REGISTER AND A TRAP AND TRACE
DEVICE

SEALED APPLICATION

- - - - - - - - - - - - - - - - - - - -X

Rena Paul, an Assistant United States Attorney for the Eastern District of New York, hereby applies to the Court for an Order pursuant to 18 U.S.C. §§ 3122 and 3123, authorizing for a period of 60 days the installation and use of a pen register and a trap and trace device on 304-279-5305, a telephone issued by Sprint (the "service provider"), used by BRANDON GREENIDGE (the "SUBJECT TELEPHONE").

In support of this application I state the following:

1. I am an Assistant United States Attorney in the Office of Kelly T. Currie, Acting United States Attorney for the Eastern District of New York. As such, I am an "attorney for the Government" as defined in Rule 1(b)(1) of the Federal Rules of Criminal Procedure, and therefore, pursuant to 18 U.S.C. § 3122, may apply for an Order authorizing the installation and use of pen registers and trap and trace devices.

2. The Court has authority to order the installation and use of a pen register or a trap and trace device anywhere in the United States if the Court finds that the attorney for the government has certified to the Court that the information likely to be obtained is relevant to an ongoing criminal investigation. 18 U.S.C. §§ 3122 and 3123. As

1

the United States Court of Appeals for the Second Circuit has explained, an application for a pen register or trap and trace device

> need only identify the applicant and the investigating law enforcement agency and certify that "the information likely to be obtained is relevant to an ongoing criminal investigation being conducted by that agency." 18 U.S.C. § 3122(b)(2). The provision was not intended to require independent judicial review of relevance; rather, *the reviewing court need only verify the completeness of the certification.*

*In re United States*, 10 F.3d 931, 935 (2d Cir. 1993) (emphasis added); *accord In re Applications*, 515 F. Supp. 2d 325, 329 (E.D.N.Y. 2007) (explaining "minimal requirement" of Section 3122(b)).

    3.    Based on information provided to me by a Special Agent with the Federal Bureau of Investigation (the "investigative agency"), I hereby certify that the investigative agency is conducting an ongoing criminal investigation into possible violations of federal criminal laws by members and associates of several sets (or subgroups) of the Crips gang operating in Brooklyn, New York, and elsewhere. The investigation has revealed that the sets, known as the Outlaw Gangsta Crips ("OGC"), Bosses in Business ("BIB"), Shoota Gang ("SG") and 8-Trey Crips overlap to some degree in membership, hierarchy, loyalties, geography and violent acts. The investigation has further revealed that members and associates have participated, and continue to participate, in crimes including (1) racketeering and racketeering conspiracy, in violation of Title 18, United States Code, Sections 1962(c), 1962(d) and 1963, by conducting the affairs of an enterprise that is engaged in, and the activities of which affect, interstate or foreign commerce, through a pattern of racketeering activity consisting of crimes enumerated in 18 U.S.C. § 1961(1), including but not limited to: acts involving violations of New York Penal Law Sections

125.27 (murder in first degree), 125.25 (murder in the second degree), 155.35 (grand larceny in the third degree), 160.05 (robbery in the third degree), 20.00 (aiding and abetting) and 110.00 (attempt) and acts in violation of federal law as set forth in (2) and (4) below; (2) drug trafficking in violation of 21 U.S.C. §§ 841, 843 and 846; (3) unlicensed dealings in firearms, in violation of 18 U.S.C. § 922; and (4) bank and wire fraud, in violation of Title 18 U.S.C. §§ 1343 and 1344 (the "SUBJECT OFFENSES"), occurring in the Eastern District of New York and elsewhere, and that the information likely to be obtained from a pen register and trap and trace device on the SUBJECT TELEPHONE is relevant to that investigation.

4. Based upon the above certification, the government requests that the Court issue an Order that provides:

a. Pursuant to 18 U.S.C. §§ 3122 and 3123, authorization for the installation and use of a pen register to record or decode dialing, routing, addressing, or signaling information — excluding the decoding of post-cut-through dialed digits ("PCTDD")[1] — transmitted from the SUBJECT TELEPHONE, to record the date and time of such dialings or transmissions, and to record the length of time the telephone receiver in question is "off the hook" for incoming or outgoing calls for a period of 60 days.

---

[1] PCTDD "are digits that are dialed from a telephone after a call is connected or 'cut-through.'" *In re Application*, 632 F. Supp. 2d 202, 203 n.1 (E.D.N.Y. 2008). Pursuant to the proposed Order to Service Provider, if possible, the provider will forward only pre-cut-through-dialed digits to the investigative agency. If the provider's technical capabilities require it to forward all dialed digits including PCTDD, however, the investigative agency will only decode and forward to the assigned special agents the numbers that are dialed before the call is cut through. Thus no PCTDD will be decoded or accessed by anyone. *See id.* at 204 n.3 ("It is irrelevant that the provider will forward PCTDD to the Government and that the Government will therefore be able, if it violates the court order, to record and decode it.").

3

    b. Pursuant to 18 U.S.C. §§ 3122 and 3123, authorization for installation and use of a trap and trace device on the SUBJECT TELEPHONE to capture and record the incoming electronic or other impulses which identify the originating numbers or other dialing, routing, addressing, or signaling information reasonably likely to identify the sources of wire or electronic communications and to record the date, time and duration of calls created by such incoming impulses, for a period of 60 days, and that the tracing operations be without geographical limits.

    c. Pursuant to 18 U.S.C. § 3123(b)(1)(C), authorization for the requested installation and use of a pen register and a trap and trace device to include the use of such a pen register and a trap and trace device on any changed telephone number assigned to an instrument bearing the same ESN, IMSI or IMEI as the SUBJECT TELEPHONE, or any changed ESN, IMSI or IMEI subsequently assigned to the same telephone number as the SUBJECT TELEPHONE, or any additional changed telephone number and/or ESN, IMSI or IMEI, whether the changes occur consecutively or simultaneously, listed to the same subscriber and account number as the SUBJECT TELEPHONE within the 60-day period authorized by this Order.

    5. The government further requests that the Court direct the service provider, and any other person or entity providing wire or electronic communication service in the United States whose assistance is used to facilitate execution of the Order, to notify special agents of the investigative agency, upon oral or written request, of any and all changes (including additions, deletions, and transfers) in service regarding the SUBJECT TELEPHONE, including telephone numbers and subscriber information (published and non-

published, and excepting call detail records as described in 18 U.S.C. § 2703(c)(2)(C)) associated with these service changes.

6. The government further requests that, pursuant to 18 U.S.C. § 3123(a)(1) and (b)(2), the Court direct that, upon service of the Order upon them, the service provider and any other person or entity providing wire or electronic communication service in the United States whose assistance may facilitate execution of the Order furnish the information, facilities, and technical assistance necessary to accomplish unobtrusively the installation and use of the pen register and trap and trace device with compensation to be paid by the investigative agency for reasonable expenses directly incurred in providing such facilities and assistance.

7. The government further requests that the Order direct the service provider, and any other person or entity providing wire or electronic communication service in the United States whose assistance is used to facilitate execution of the Order, to furnish the results of the pen register and trap and trace device installations to special agents of the investigative agency as soon as practicable, and on a continuing basis, 24 hours a day for the duration of the Order.

8. Finally, pursuant to 18 U.S.C. §§ 3123(d) and 2705(b), the government also requests that the service provider, and any other person or entity whose assistance is used to facilitate execution of the Order be ordered not to disclose to the listed subscriber of the telephone, or to any other person (a) the existence of the Order of Authorization; (b) the existence of the Order to Service Provider; and (c) the existence of the pen register and trap and trace device to the listed subscriber for the SUBJECT TELEPHONE, the subscribers of the telephones initiating incoming calls to or receiving outgoing calls from the SUBJECT

TELEPHONE, or to any other person, unless and until otherwise ordered by the Court. Any such disclosure might jeopardize this investigation because it would alert the target to the existence of an investigation and might lead to the destruction and/or concealment of evidence and/or the flight of target.

        9.      No prior request for the relief set forth herein has been made except to the extent set forth above. The foregoing is affirmed under the penalties of perjury. *See* 28 U.S.C. § 1746.

Dated: Brooklyn, New York
       July 8, 2015

Reha Paul
Assistant United States Attorney
718-254-7575

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK          15 MISC 1300
- - - - - - - - - - - - - - - - - - - - X
IN RE APPLICATION OF
THE UNITED STATES OF AMERICA                    SEALED ORDER
FOR AN ORDER AUTHORIZING THE USE OF             TO SERVICE PROVIDER
A PEN REGISTER AND A TRAP AND TRACE
DEVICE
- - - - - - - - - - - - - - - - - - - - X

WHEREAS this Court has, upon the application of the United States of America, entered an Order pursuant to 18 U.S.C. §§ 3121 *et seq.*, authorizing the use of a pen register and a trap and trace device for a period of 60 days on 304-279-5305, a telephone issued by Sprint (the "service provider"), used by BRANDON GREENIDGE (the "SUBJECT TELEPHONE"), in connection with an ongoing criminal investigation;

Now therefore, it is hereby:

1. ORDERED, pursuant to 18 U.S.C. § 3123, that special agents of the Federal Bureau of Investigation (the "investigative agency") may install, or cause to be installed, and use a pen register to record or decode dialing, routing, addressing, or signaling information transmitted from the SUBJECT TELEPHONE – excluding tower/sector information and also excluding both the recording and the decoding of post-cut-through dialed digits (defined as digits dialed from a telephone after a call is connected, or "cut through") – to record the date and time of such dialings or transmissions, and to record the length of time the telephone receiver in question is "off the hook" for incoming or outgoing calls for a period of 60 days, beginning at any time within 14 days from the date of this Order.

2. IT IS FURTHER ORDERED that the service provider shall forward to the investigative agency only those digits dialed before a call is cut-through. However, to the

extent that the service provider is unable to exclude post-cut-through dialed digits, the service provider shall forward nothing to the investigative agency. *See* Addendum.

    3.    IT IS FURTHER ORDERED, pursuant to 18 U.S.C. § 3123, that special agents of the investigative agency may install, or cause to be installed, and use a trap and trace device on the SUBJECT TELEPHONE to capture and record the incoming electronic or other impulses which identify the originating number, or other dialing, routing, addressing, and signaling information reasonably likely to identify the source of a wire or electronic communication, and to record the date, time, and duration of calls created by such incoming impulses, for a period of 60 days, beginning at any time within 14 days from the date of this Order, and that the tracing operations be without geographical limits.

    4.    IT IS FURTHER ORDERED, pursuant to 18 U.S.C. § 3123(b)(1)(C), that this authorization for the installation and use of a pen register and a trap and trace device applies not only to the telephone number listed above for the SUBJECT TELEPHONE, but also to any changed telephone number assigned to an instrument bearing the same ESN, IMSI or IMEI as the SUBJECT TELEPHONE, or any changed ESN, IMSI or IMEI subsequently assigned to the same telephone number as the SUBJECT TELEPHONE, or any additional changed telephone number and/or ESN, IMSI or IMEI, whether the changes occur consecutively or simultaneously, listed to the same subscriber and wireless telephone account number as the SUBJECT TELEPHONE within the 60-day period authorized by this Order.

    5.    IT IS FURTHER ORDERED that the service provider and any other person or entity providing wire or electronic communication service in the United States whose assistance is used to facilitate execution of the Order notify special agents of the investigative agency, upon oral or written request, of any and all changes (including

additions, deletions, and transfers) in service regarding the SUBJECT TELEPHONE to include telephone numbers and subscriber information (published and non-published, and excepting call detail records, as described in 18 U.S.C. § 2703(c)(2)(C)) associated with these service changes.

6. IT IS FURTHER ORDERED, pursuant to 18 U.S.C. § 3123(a)(1) and (b)(2), and 18 U.S.C. § 2703(c) and (d), that upon service of this Order upon it, the service provider and any other person or entity providing wire or electronic communication service in the United States whose assistance is used to facilitate execution of the Order shall furnish special agents of the investigative agency forthwith all information, including but not limited to telephone subscriber information, facilities, and technical assistance necessary to accomplish the installation and use of the pen register and trap and trace device unobtrusively and with minimum interference.

7. IT IS FURTHER ORDERED that the service provider and any other person or entity providing wire or electronic communication service in the United States whose assistance is used to facilitate execution of the Order furnish the results of the pen register and trap and trace device installations to special agents of the investigative agency as soon as practicable, and on a continuing basis, 24 hours a day for the duration of the Order.

8. IT IS FURTHER ORDERED that the service provider and any other person or entity that provides technical assistance in executing this Order be compensated by the investigative agency for reasonable expenses directly incurred in providing such assistance.

9. IT IS FURTHER ORDERED that this Order shall be sealed until otherwise ordered by the Court, except that copies may be retained by the United States Attorney's Office, the investigative agency, the service provider and any other person or entity whose assistance is used to execute this Order.

10. IT IS FURTHER ORDERED, finally, that unless and until otherwise ordered by the Court, the service provider and its representatives, agents and employees, and any other person or entity providing technical assistance in executing this Order shall not disclose until further notice in any manner, directly or indirectly, by any action or inaction: (a) the existence of the Order of Authorization; (b) the existence of the Order to the Service Provider; and (c) the existence of the pen register and trap and trace device to the listed subscriber for the SUBJECT TELEPHONE, the subscribers of the telephones initiating incoming calls to or receiving outgoing calls from the SUBJECT TELEPHONE, or to any other person.

11. Please see the Addendum hereto for further directives.

Dated: Brooklyn, New York
July 8, 2015

s/James Orenstein
THE HONORABLE James Orenstein
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK

## ADDENDUM TO SEALED ORDER TO SERVICE PROVIDER

The attached order authorizes the use of a pen register and directs the relevant provider of telecommunications service (the "Provider") to furnish such assistance to the government in accomplishing the installation and use of that pen register. The order uses the term "pen register" as defined in 18 U.S.C. § 3127(c), which provides, in part, that the information to be recorded or decoded "shall not include the contents of any communication[.]" Post-cut-through dialed digits ("PCTDD") contain such "contents," as defined in 18 U.S.C. § 2510(8), and that unless such contents are screened out, the post-cut-through dialed digits therefore may not be provided to the government pursuant to the attached order. *See In the Matter of the Application of the United States of America for an Order: (1) Authorizing the Installation and Use of a Pen Register and Trap and Trace Device, and (2) Authorizing Release of Subscriber and Other Information*, 622 F. Supp. 2d 411 (S.D. Tex. 2007); *In the Matter of Applications of the United States of America for Orders (1) Authorizing the Use of Pen Registers and Trap and Trace Devices and (2) Authorizing Release of Subscriber Information*, 515 F. Supp. 2d 325 (E.D.N.Y. 2007); *In the Matter of the Application of the United States of America for an Order Authorizing (1) Installation and Use of a Pen Register and Trap and Trace Device or Process, (2) Access to Customer Records, and (3) Cell Phone Tracking*, 441 F. Supp. 2d 816 (S.D. Tex. 2006).

The government proposes to avoid the unlawful interception of the contents of electronic communications either by having the provider furnish only pre-cut-through dialed digits or, if that is not within the providers capability, to have government personnel at the relevant investigative agency decode and forward to the special agents involved in the investigation only such pre-cut-through digits. The government thus proposes to obtain a pen register "excluding the *decoding* of" PCTDD. Sealed Application at 3 (emphasis added). In making this proposal, the government relies on *In the matter of an Application of the United States for an Order Authorizing the Use of Two Pen Register and Trap and Trace Devices*, 632 F. Supp. 2d 202, 204 n.3 (E.D.N.Y. 2008). Sealed

Application at 3 n.1. For reasons I have previously explained, I respectfully disagree with the proposition that the government's proposal is consistent with the law. *See In re Application of the U.S. for an Order Authorizing the Use of a Pen Register and a Trap and Trace Device on Wireless Telephone*, 2008 WL 5255815, *3 (E.D.N.Y. Dec. 16, 2008).

Accordingly, to the extent that the government seeks to have the Provider disclose all dialed digits to some government entity, and then to have personnel at that entity transmit to investigative agents only pre-cut-through dialed digits, I deny the government's request because granting it would require the Provider to violate applicable law. If the Provider is able to furnish the government only with *either* pre-cut-through dialed digits *or* all dialed digits except for those that constitute "contents" within the meaning of 18 U.S.C. § 2510(8), it must do so. If the Provider cannot furnish the government with either of those categories of information without also providing post-cut-through dialed digits that contain the contents of any communication, the government's application for a pen register is denied in its entirety.

**SO ORDERED.**

Dated: Brooklyn, New York
July 8, 2015

/s/ James Orenstein
JAMES ORENSTEIN
U.S. Magistrate Judge

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

15 MISC 1300

------------------------------X
IN RE APPLICATION OF
THE UNITED STATES OF AMERICA          SEALED ORDER
FOR AN ORDER AUTHORIZING THE USE OF   OF AUTHORIZATION
A PEN REGISTER AND A TRAP AND TRACE
DEVICE
------------------------------X

This matter comes before the Court pursuant to an application by Assistant United States Attorney Rena Paul, an attorney for the Government as defined by Rule 1(b)(1) of the Federal Rules of Criminal Procedure and a duly-authorized representative of a "governmental entity" under 18 U.S.C. § 2703(c) and (d) requesting an Order pursuant to 18 U.S.C. §§ 3122 and 3123, authorizing for a period of 60 days the installation and use of a pen register and a trap and trace device on 304-279-5305, a telephone issued by Sprint (the "service provider"), used by BRANDON GREENIDGE (the "SUBJECT TELEPHONE").

UPON REVIEW OF THE APPLICATION, THE COURT HEREBY FINDS THAT, pursuant to 18 U.S.C. § 3123, Applicant has certified that the information likely to be obtained by use of a pen register and a trap and trace device is relevant to an ongoing criminal investigation being conducted by the Federal Bureau of Investigation, (the "investigative agency") into possible violations of federal criminal laws, including (1) racketeering and racketeering conspiracy, in violation of Title 18, United States Code, Sections 1962(c), 1962(d) and 1963, by conducting the affairs of an enterprise that is engaged in, and the activities of which affect, interstate or foreign commerce, through a pattern of racketeering activity consisting of crimes enumerated in 18 U.S.C. § 1961(1), including but not limited to: acts involving violations of New York Penal Law Sections

125.27 (murder in first degree), 125.25 (murder in the second degree), 155.35 (grand larceny in the third degree), 160.05 (robbery in the third degree), 20.00 (aiding and abetting) and 110.00 (attempt) and acts in violation of federal law as set forth in (2) and (4) below; (2) drug trafficking in violation of 21 U.S.C. §§ 841, 843 and 846; (3) unlicensed dealings in firearms, in violation of 18 U.S.C. § 922; and (4) bank and wire fraud, in violation of Title 18 U.S.C. §§ 1343 and 1344 (the "SUBJECT OFFENSES") by members and associates of several sets (or subgroups) of the Crips gang, occurring in the Eastern District of New York and elsewhere, and that the information likely to be obtained from a pen register and trap and trace device on the SUBJECT TELEPHONE is relevant to that investigation.

IT IS HEREBY ORDERED, pursuant to 18 U.S.C. § 3123, that special agents of the investigative agency may install, or cause to be installed, and use a pen register to record or decode dialing, routing, addressing, or signaling information transmitted from the SUBJECT TELEPHONE — excluding tower/sector information and also excluding both the recording and the decoding of post-cut-through dialed digits ("PCTDD")[2] — to record the date and time of such dialings or transmissions, and to record the length of time the telephone receiver in question is "off the hook" for incoming or outgoing calls for a period 60 days, beginning at any time within 14 days from the date of this Order, and that the tracing operations be without geographical limits.

---

[2]  PCTDD "are digits that are dialed from a telephone after a call is connected or 'cut-through.'" *In re Application*, 632 F. Supp. 2d 202, 203 n.1 (E.D.N.Y. 2008). Pursuant to the proposed Order to Service Provider, the provider will forward only pre-cut-through-dialed digits to the investigative agency. If the provider's technical capabilities require it to forward all dialed digits including PCTDD, however, the provider will forward nothing to the investigative agency or the assigned special agents. Thus no PCTDD will be recorded or decoded or accessed by anyone. *See* Addendum.

IT IS FURTHER ORDERED, pursuant to 18 U.S.C. § 3123, that special agents of the investigative agency may install, or cause to be installed, and use a trap and trace device on the SUBJECT TELEPHONE to capture and record the incoming electronic or other impulses which identify the originating number, or other dialing, routing, addressing, and signaling information reasonably likely to identify the source of a wire or electronic communication, and to record the date, time, and duration of calls created by such incoming impulses, for a period of 60 days, beginning at any time within 14 days from the date of this Order, and that the tracing operations be without geographical limits.

IT IS FURTHER ORDERED that this authorization for the installation and use of a pen register and a trap and trace device applies not only to the telephone number listed above for the SUBJECT TELEPHONE, but also to any changed telephone number assigned to an instrument bearing the same ESN, IMSI or IMEI as the SUBJECT TELEPHONE, or any changed ESN, IMSI or IMEI subsequently assigned to the same telephone number as the SUBJECT TELEPHONE, or any additional changed telephone number and/or ESN, IMSI or IMEI, whether the changes occur consecutively or simultaneously, listed to the same subscriber and wireless telephone account number as the SUBJECT TELEPHONE within the 60-day period authorized by this Order.

IT IS FURTHER ORDERED that the service provider and any other person or entity providing wire or electronic communication service in the United States whose assistance is used to facilitate execution of the Order notify special agents of the investigative agency, upon oral or written request, of any and all changes in service regarding the SUBJECT TELEPHONE to include telephone numbers and subscriber information

(published and non-published and excepting call detail records as described in 18 U.S.C. § 2703(c)(2)(C)) associated with these service changes.

IT IS FURTHER ORDERED, pursuant to 18 U.S.C. § 3123(a)(1) and (b)(2), and 18 U.S.C. § 2703(c) and (d), that upon service of this Order upon it, the service provider and any other person or entity providing wire or electronic communication service in the United States whose assistance may facilitate execution of the Order shall furnish special agents of the investigative agency forthwith all information, including but not limited to telephone subscriber information, facilities, and technical assistance necessary to accomplish the installation and use of the pen register and trap and trace device unobtrusively and with minimum interference.

IT IS FURTHER ORDERED that the service provider and any other person or entity providing wire or electronic communication service in the United States whose assistance is used to facilitate execution of the Order furnish the results of the pen register and trap and trace device installations to special agents of the investigative agency as soon as practicable, and on a continuing basis, 24 hours a day for the duration of the Order.

IT IS FURTHER ORDERED that the service provider and any other person or entity whose assistance is used to facilitate this Order be compensated by the investigative agency for reasonable expenses directly incurred in providing such assistance.

Good cause having been shown, IT IS FURTHER ORDERED, pursuant to 18 U.S.C. §§ 3123(d) and 2705(b), that this Order and the application be sealed until otherwise ordered by the Court, and that the service provider, its representatives, agents and employees, and any other person or entity involved in facilitating this Order shall not disclose in any manner, directly or indirectly, by any action or inaction, (a) the existence of the Order of

Authorization; (b) the existence of the Order to Service Provider; and (c) the existence of the pen register and trap and trace device to the listed subscriber for the SUBJECT TELEPHONE, the subscribers of the telephones initiating incoming calls to or receiving outgoing calls from the SUBJECT TELEPHONE, or to any other person.

Please see the Addendum hereto for further directives.

Dated: Brooklyn, New York
July 8, 2015

                                       s/James Orenstein
                                       THE HONORABLE James Orenstein
                                       UNITED STATES MAGISTRATE JUDGE
                                       EASTERN DISTRICT OF NEW YORK

## ADDENDUM TO SEALED ORDER OF AUTHORIZATION

The attached order authorizes the use of a pen register and directs the relevant provider of telecommunications service (the "Provider") to furnish such assistance to the government in accomplishing the installation and use of that pen register. The order uses the term "pen register" as defined in 18 U.S.C. § 3127(c), which provides, in part, that the information to be recorded or decoded "shall not include the contents of any communication[.]" Post-cut-through dialed digits ("PCTDD") contain such "contents," as defined in 18 U.S.C. § 2510(8), and that unless such contents are screened out, the post-cut-through dialed digits therefore may not be provided to the government pursuant to the attached order. *See In the Matter of the Application of the United States of America for an Order: (1) Authorizing the Installation and Use of a Pen Register and Trap and Trace Device, and (2) Authorizing Release of Subscriber and Other Information*, 622 F. Supp. 2d 411 (S.D. Tex. 2007); *In the Matter of Applications of the United States of America for Orders (1) Authorizing the Use of Pen Registers and Trap and Trace Devices and (2) Authorizing Release of Subscriber Information*, 515 F. Supp. 2d 325 (E.D.N.Y. 2007); *In the Matter of the Application of the United States of America for an Order Authorizing (1) Installation and Use of a Pen Register and Trap and Trace Device or Process, (2) Access to Customer Records, and (3) Cell Phone Tracking*, 441 F. Supp. 2d 816 (S.D. Tex. 2006).

The government proposes to avoid the unlawful interception of the contents of electronic communications either by having the provider furnish only pre-cut-through dialed digits or, if that is not within the providers capability, to have government personnel at the relevant investigative agency decode and forward to the special agents involved in the investigation only such pre-cut-through digits. The government thus proposes to obtain a pen register "excluding the *decoding* of" PCTDD. Sealed Application at 3 (emphasis added). In making this proposal, the government relies on *In the matter of an Application of the United States for an Order Authorizing the Use of Two Pen Register and Trap and Trace Devices*, 632 F. Supp. 2d 202, 204 n.3 (E.D.N.Y. 2008). Sealed

Application at 3 n.1. For reasons I have previously explained, I respectfully disagree with the proposition that the government's proposal is consistent with the law. *See In re Application of the U.S. for an Order Authorizing the Use of a Pen Register and a Trap and Trace Device on Wireless Telephone*, 2008 WL 5255815, *3 (E.D.N.Y. Dec. 16, 2008).

Accordingly, to the extent that the government seeks to have the Provider disclose all dialed digits to some government entity, and then to have personnel at that entity transmit to investigative agents only pre-cut-through dialed digits, I deny the government's request because granting it would require the Provider to violate applicable law. If the Provider is able to furnish the government only with *either* pre-cut-through dialed digits *or* all dialed digits except for those that constitute "contents" within the meaning of 18 U.S.C. § 2510(8), it must do so. If the Provider cannot furnish the government with either of those categories of information without also providing post-cut-through dialed digits that contain the contents of any communication, the government's application for a pen register is denied in its entirety.

**SO ORDERED.**

Dated: Brooklyn, New York
July 8, 2015

/s/ James Orenstein
JAMES ORENSTEIN
U.S. Magistrate Judge